IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02340-CMA-KMT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

and

SAFIA ALI ABDULLE, et al.,

    Plaintiff Intervenors,

v.

JETSTREAM GROUND SERVICES, INC.

    Defendant.

## EEOC'S MOTION FOR RECONSIDERATION

In its summary judgment order, the Court made two seemingly contrary rulings. First, the Court ruled that, as a matter of law, allowing Muslim women to wear hijabs at work imposes no undue hardship on Defendant. [Doc. 184, at 54, 58]. Second, the Court dismissed the EEOC's claim that Milko Haji was denied religious accommodation [*Id.* at 40], while acknowledging evidence that Haji asked to wear a hijab and her request was denied. [*Id.* at 4 n.4, 36]. In light of the evidence that Haji was denied the very accommodation the Court ruled there was no legitimate basis to refuse, the EEOC respectfully requests that the Court reconsider its order dismissing the EEOC's claim that Haji was denied religious accommodation.[1]

---

[1] The Parties conferred pursuant to D.C. COLO. L. Civ. R. 7.1. Defendant opposes the relief sought.

When Haji was denied accommodation, she was compelled to choose between her faith and her job. Choices such as these are proscribed by Title VII. Inherent in the very concept of an employer's duty to accommodate an employee's religious beliefs and practices is the premise that a person should not be forced into a Hobson's choice between her job and her deeply held religious convictions. Thus, it was error to dismiss EEOC's claim that Haji was denied accommodation, based only on the court's analysis that there was no adverse employment action. No additional adverse action is required. The *McDonnell Douglas* framework must be adjusted for the specific facts of a case. Here, however, *McDonnell Douglas* was inapplicable because there was direct evidence of the statutory violation – denial of religious accommodation.[2]

### I. The Legal Standard for Reconsideration.

A district court has broad discretion to reconsider an interlocutory ruling before the entry of judgment. *XY, LLC v. Trans Ova Genetics, LC*, 2015 WL 5579551, *1 (D. Colo. Sept. 23, 2015) (citing *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011)). Reconsideration may be appropriate even when the more stringent requirements of Fed. R. Civ. P. 59(e) or 60(b) have not been satisfied. *Trans Ova,* 2015 WL 5579551, at *1. This is because the power to reconsider is governed not by rule or

---

[2] The EEOC acknowledges that in summary judgment briefing, it did not brief the court as to the effect of an additional adverse employment action in a religious accommodation case, or discuss the need to adjust the burden-shifting framework if applied. The EEOC argued that the *McDonnell Douglas* framework was inapplicable because there is direct evidence that Haji was denied religious accommodation, [Doc. 117, at 13-14], and thus, did not address or distinguish the cases applying *McDonnell Douglas* where there was additional adverse action. The EEOC did argue that Haji was subjected to additional adverse employment actions, but this was in the context of briefing the retaliation claim, which does require proof of adverse action, taken in retaliation for prior protected conduct. [*See* Doc. 117, at 22-23, and Doc. 184 at 30-31 (for elements of retaliation claim)]. Because the new arguments are purely legal, and not factual, the Court may consider them. *See Proctor & Gamble v. Haugen,* 222 F3d 1262, 1271 (10th Cir.2000).

2

statute, but is rooted in the court's inherent equitable power to "'process litigation to a just and equitable conclusion.'" *National Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000). Thus, "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

Here, the order dismissing the claim that Haji was denied religious accommodation should be reconsidered on the third basis, to prevent manifest injustice, and to correct clear error. Based on the Court's ruling that there was no undue hardship on Defendant to allow Muslim women to wear hijabs, and the Court's recognition of evidence that Haji asked for and was denied this very accommodation, it is manifestly unjust to deny her relief for the harm she suffered from being forced to choose between her religious convictions and her job. The Court also incorrectly applied the *McDonnell Douglas* framework, even though there is direct evidence that Haji was denied religious accommodation, and in so doing, erroneously required an additional adverse employment action, other than the denied accommodation.

## II. Haji was Entitled to a Hijab Accommodation as a Matter of Law.

By rejecting Defendant's undue hardship defense regarding hijabs, the Court signaled that Defendant was obligated to accommodate Haji when she asked to wear a hijab in 2008.[3] [*See* Doc. 184, at 54, 58]. The Court recognized evidence of Haji's "discussions with JetStream personnel about her desire to wear a hijab for religious

---

[3] Based on the summary judgment standard, we assume these facts in the light most favorable to EEOC.

reasons." [Doc. 184, at 36]. The testimony referenced by the Court also reflects that during the discussions with JetStream personnel, two different managers told Haji she was not allowed to wear a hijab at work. [Doc. 117-055, Haji Dep. 23:2-24:20, 26:9-28:12, 50:15-56:13, 75:2-77:13]. Specifically, Haji stated that a manager named Tom brought her a small scarf that was not large enough to cover her hair and neck, as her religion requires. [*Id.* at 23:9-14]. This key testimony followed:

> Q. Okay. Were you already wearing a head scarf when he brought you that piece of scarf?
> 
> A. No, I was not. They didn't allow us to wear hijab. So what I did was I covered my hair with a black scarf under that and then I put the hat on top of it. That is how I was working.
> 
> Q. Okay. The black scarf and the hat that you've described, did that completely cover your hair?
> 
> A. Although I try to cover my hair, according to my belief, it didn't cover all my neck and the rest of the area. So I didn't have another option, so I put it on and the hat on top of it.
> 
> Q. So do you think it violated your religious beliefs to wear the black scarf with the hat on top of it?
> 
> A. Yes, actually. According to my belief, it violates. But since I have a family responsibility and I have to keep my job, that's the only reason why I kept doing that and was wearing that.

[*Id.* at 24:3-20]. Haji further testified that on the day JetStream took over, a manager named Dave came to the break room and told employees, "you cannot work my company with [ ] this covering" referring to the Muslim women's headscarves. [*Id.* at 26:7-27:6]. When Haji was in line to get a uniform, Dave reiterated that she was not allowed to wear a hijab, but told her she could wear a company hat instead. [*Id.* at 35:1-18; 54:3-56:13]. But when the hat arrived, it was too small to cover her hair. [*Id.* at 56:10-13]. The manager who Haji describes as "Dave", is David Norris, the co-owner

4

and vice-president of JetStream, and the same man who refused to hire Intervenors because they would not agree to remove their hijabs. [Doc. 184, at 5-7; Doc. 117-055, Haji Dep. 54:3-56:13]. Thus, there is substantial evidence that Haji requested and was denied the religious accommodation of wearing a hijab at work.

Based on the Court's ruling that allowing Muslim women to wear hijabs at work poses no undue hardship to Defendant, and based on evidence showing Haji was refused this very accommodation, it is manifestly unjust to deny Haji relief for the harm she suffered when she was denied an accommodation. Accordingly, the EEOC requests that the Court reconsider its ruling dismissing EEOC's claim that Haji was denied religious accommodation.

### *III. Title VII Requires an Accommodation, Absent Undue Hardship, and No Other Adverse Action is Required.*

In the same vein, it was legal error to dismiss Haji from the suit, based only on the lack of an adverse employment action, because denial of accommodation is the statutory violation, and no additional adverse action is required. As the Court stated, "an employer violates Section 2000e-2(a)(1) when it does not make reasonable accommodations, short of undue hardship, for the religious practice of employees." [Doc. 184, at 54]. This premise is based on Title VII's definition of "religion" to include:

> all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. §§ 2000e(j). The Supreme Court explained that, "[t]he intent and effect of this definition was to make it an unlawful employment practice under Section 703(a)(1) for

5

an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977). Recently, in *Abercrombie,* the Court reaffirmed that "religious practice is one of the protected characteristics that cannot be accorded disparate treatment *and must be accommodated.*" 135 S. Ct. 2028, 2033-34 (2015) (emphasis added). Thus, the duty to provide religious accommodation is found in the plain language of Title VII.

By contrast, nothing in Title VII's language makes relief for denial of religious accommodation contingent on any additional adverse action. Indeed, the Supreme Court's *Abercrombie* decision suggests that denial of religious accommodation is itself an adverse employment action. The Court states that if an employer is "willing to accommodate – which means nothing more than allowing the plaintiff to engage in her religious practice despite the employer's normal rules to the contrary – adverse action 'because' of the religious practice is not shown." *Id.* at 2032 n.2. Thus, the converse must also be true - where the employer is *not* willing to accommodate, an adverse action *is* shown. *See generally Bushouse v. Local Union 2209, United Auto., Aerospace & Agricultural Implement Workers of America*, 164 F. Supp. 2d 1066 (N.D. Ind. 2001) (assuming that a failure to accommodate was the adverse action).

Title VII is "plainly intended to relieve individuals of the burden of choosing between their jobs and their religious convictions where such relief will not unduly burden others." *Nottelson v. Smith Steel Workers D.A.L.U. 19806*, 643 F.2d 445, 454 (7th Cir. 1981); *Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129, 136 (3d Cir. 1986)

(same). An employee denied accommodation, who elects to compromise her religious convictions rather than lose her job, has still been denied the accommodation required by Title VII. *See Am. Postal Workers Union v. Postmaster Gen.*, 781 F.2d 772, 774-76 (9th Cir. 1986). In *APWU*, a union brought suit under Title VII for two postal service employees who raised religious objections to accepting draft registration forms. *Id.* at 774-75. The Postal Service offered the employees a choice to either transfer to a potentially inferior position, or to process the draft forms, on pain of discharge. *Id.* Under protest, one employee transferred; the other remained in his position but processed the forms. *Id.* at 774. The Ninth Circuit focused on the adequacy of the offered accommodation. *Id.* at 776. The fact that one employee suffered the adverse action (transfer) and the other compromised his religious convictions instead, played no part in the court's decision. *Id.*

Haji's facts are identical to the postal employee who sacrificed his religious convictions, rather than be fired or transferred. Like him, Haji was harmed when JetStream unnecessarily forced her to choose between her religious convictions and her job. The fact that Haji suffered no additional adverse employment action does not negate the denial of religious accommodation, or the resulting harm.

Also instructive on this point are a number of decisions where courts have required employers and labor unions to provide religious objectors with an alternative to paying union dues. *See, e.g.*, *Nottelson,* 643 F.2d at 454 (plaintiff made out cognizable claim of religious discrimination where defendants refused to let him opt out of paying union dues); *Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239, 1241, 1246 (9th Cir. 1981)

(affirming district court decision enjoining defendants from discharging plaintiff for refusing to pay union dues). In many of these cases, courts intervened ***before*** the plaintiff was subject to any additional adverse action, recognizing that the forfeiture of one's religious convictions is, in and of itself, a harm that Title VII seeks to avoid. *See, e.g., Tooley*, 648 F.2d at 1241; *Burns v. S. Pacific Transp. Co.*, 589 F.2d 403, 405 (9th Cir. 1978) (injunctive relief requiring employer and union to accommodate the employee's religious objection to paying dues); *Cooper v. Gen. Dynamics, Convair Aerospace Div., Ft. Worth Operations*, 533 F.2d 163, 165, 170-71 (5th Cir. 1976) (injunction requiring defendants accommodate class of current employees); *EEOC v. Alliant Techsystems*, 1998 WL 777015, *1-3, 7 (W.D. Va. Sept. 18, 1998) (summary judgment in favor of plaintiffs for failure to accommodate religious objections to dues).

The "draft objector" and "union dues" cases confirm that an employer violates Title VII when it denies a reasonable religious accommodation, thereby placing the employee in the position of choosing between religious principles or peril at work. This is the very quandary Title VII was designed to avoid. *Nottelson,* 643 F.2d at 454.

As courts have recognized in the context of hostile work environment, "the language of Title VII is not limited to 'economic' or 'tangible' harm. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment [ ] in employment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). The religious accommodation mandate of Title VII similarly implicates the terms and conditions of employment. In the spectrum of disparate treatment, intentional denial of religious accommodation is but another form of

intentional discrimination. [Doc. 184, at 54 (denial of accommodation violates Section 2000e–2(a)(1), which prohibits discrimination in terms and conditions of employment.)]

In interpreting Title VII's accommodation provisions, courts are frequently guided by analogous claims under the ADA. *See, e.g.*, *EEOC v. Abercrombie & Fitch, Inc.*, 731 F. 3d 1106, 1123 (10th Cir. 2013) (Title VII accommodation claims "undisputedly analogous" to the "context" of the ADA) (rev'd on other grounds, 135 S. Ct. 2028). The ADA similarly requires employers to provide an accommodation, absent undue hardship, 42 U.S.C. § 12112(b)(5)(A), and courts have also recognized that someone denied accommodation is entitled to relief even if that person somehow manages without the accommodation. *See generally Sturz v. Wis. Dep't of Corr.*, 642 F. Supp. 2d 881, 888 (W.D. Wis. 2009) ("[i]t may be that plaintiff could open the front door with great difficulty or make her way through the parking lot without falling each time . . . A paraplegic might be able to get out of her wheel chair and pull herself up a flight of stairs as well, but that does not mean an employer may refuse to install a ramp or an elevator on that ground."); *Thill v. Olmsted County*, 2010 WL 3385234 at *3 (D. Minn. Aug. 24, 2010) ("Title II of the ADA does not leave a person with disabilities who manages to crawl up a courthouse's steps with no remedy for the courthouse's inaccessibility."). Both statutes impose an affirmative burden on employers to accommodate the needs of employees, and that obligation is not obviated by an employee's sacrifices. Title VII and the ADA are prophylactic in this regard. *Tennessee v. Lane*, 541 U.S. 509, 511 (2004) (discussing prophylactic nature of accommodation provisions under Title II of the ADA);

*Kolstad v. ADA*, 527 U.S. 526, 545 (1999) (Title VII's "'primary objective' is 'a prophylactic one' . . . it aims, chiefly, 'not to provide redress but to avoid harm.'").

Here, Defendant wrongfully denied Haji's request to wear a hijab at work. As a result, Haji suffered the harm of being forced to choose between her livelihood and her spiritual wellbeing. Relief for that harm is not contingent on proof of any further adverse employment action. Accordingly, the EEOC asks the Court to reconsider its decision dismissing the claim that Haji was denied reasonable religious accommodation.

### *IV. If Applied, the Burden-Shifting Framework Should Have Been Adjusted to Omit the Requirement of an Additional Adverse Employment Action.*

The Supreme Court has cautioned that the familiar *McDonnell Douglas* burden shifting model is a flexible analysis and should be adjusted to account for the specific facts of each case. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977) ("[o]ur decision in [*McDonnell Douglas*], however, did not purport to create an inflexible formulation"). As this Court recognized, the burden-shifting mechanism, as adjusted for accommodation cases is not the usual model, intended to probe the employer's subjective intent for taking an adverse action. [Doc. 184, at 31 n.19, (citing *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000)]. Rather, it is used to "determine whether the various parties have advanced sufficient evidence to meet their respective traditional burdens to prove or disprove the reasonableness of the accommodations offered or not offered." *Id.* Thus, in an accommodation case, the analysis is focused on the accommodation – what accommodation is reasonable and

what accommodation was offered, if any. The existence or non-existence of any additional adverse action is not germane to the analysis of accommodation.

Here, the *prima facie* elements relied on by the Court were adopted from cases where the plaintiffs suffered adverse actions after they refused to compromise their religious principles. [Doc. 184, at 25 (citing *Abercrombie*, 135 S. Ct. at 2032 (denied hire); *Thomas*, 225 F.3d at 1156 (discharge)]. In other Title VII accommodation cases, however, courts have held that the threat of an adverse action is enough:

> Burns fully met his burden of proving a Prima facie case of religious discrimination in violation of Title VII. He proved that he had a bona fide belief that union membership and the payment of union dues were contrary to the teachings of his Church. He informed his employer and the Union about his religious views. [And although he was not discharged] [h]e was thereafter threatened with discharge for his refusal to pay union dues and assessments.

*Burns*, *supra,* 589 F. 2d at 405; *see also Bushouse, supra,* 164 F. Supp. 2d at 675 (noting that plaintiffs were not threatened with discharge). And notably, in the "draft objector" and "union dues" cases discussed above, where there were no adverse employment actions (other than denial of accommodation), the courts did not apply *McDonnell Douglas* at all. *See APWU*, 781 F.2d 772; *Nottelson,* 643 F.2d 445; *Protos,* 797 F.2d 129; *Tooley,* 648 F.2d 1239; *Burns,* 589 F.2d 403; *Cooper* 533 F.2d 163; *Alliant,* 1998 WL 77015.

As this Court recognized, it is the denial of reasonable accommodation which violates Title VII. [Doc. 184, at 54]. Indeed, an employee denied reasonable religious accommodation has suffered the grave harm of being forced to choose between her religion and her job, an injury inflicted day after day, every time she gives up her

religious beliefs to go to work. This injury was observed by one witness quoted in the Court's Order, Mary Berish, who noted that her Ethiopian colleagues were visibly distressed at wearing pants in public and needing to remove their headscarves. [*See id.* at 13 ("the Ethiopian women would wear skirts over pants and headscarves up until our shift would start – then they would take off the skirts and headscarves and put them in backpacks for the shift . . . You could tell they didn't want to be seen in public wearing pants and without their headscarves but they had to take these off for work.")].

In applying the *McDonnell Douglas* framework, it was error to dismiss a claim for denial of religious accommodation based on lack of adverse employment action, because denial of accommodation is the statutory violation, not any subsequent adverse action if one occurs. Requiring an additional adverse action in every case operates to foreclose justice for people like Haji who are needlessly obliged to choose between their religious convictions and their jobs, and effectively excludes from the protections of Title VII every worker across the country who remains employed, but does so only by sacrificing deeply-held religious beliefs. Thus, if a burden-shifting framework is applied, it should be adjusted to account for this group of victims; ones who have compromised religious beliefs to avoid further adverse employment actions.

### V. The *McDonnell Douglas* Framework Should Not Have Been Applied Because There is Direct Evidence Haji Was Denied Accommodation.

The *McDonnell Douglas* burden-shifting framework is an evidentiary model initially developed to analyze employment discrimination claims where the proof is by indirect or circumstantial evidence. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111,

121 (1985) ("[t]he shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.'" (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979)). As a result, the *prima facie* elements in the *McDonnell Douglas* framework do not necessarily equate to elements necessary to prove a claim of discrimination. For example, in an action for unlawful discharge because of age, a plaintiff establishes his *prima facie* case under *McDonnell Douglas* by showing that he was: (1) within the protected age group; (2) adversely affected by the defendant's employment decision; (3) qualified for the position at issue; and, (4) replaced by a person outside the protected group. *Branson v. Price River Coal Co.*, 853 F.2d 768, 770 (10th Cir. 1988). The purpose of these elements is to provide facts sufficient to support an inference that the decision was motivated by discrimination – that is, if a person over 40 is discharged from a job he was successfully performing, and replaced by a younger person, those facts are sufficient to infer the discharge was because of age. But if the plaintiff is told by the company that he is being discharged because he is too old to do the job, the *McDonnell Douglas* framework is unnecessary. Thus, it is well-settled that when there is direct evidence of discrimination, *McDonnell Douglas* does not apply. *Thurston,* 469 U.S. 121; *Fischer v. Forestwood Co., Inc.,* 525 F.3d 972, 983 (10th Cir. 2008).

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1154 (10th Cir. 2008) (citing *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854 (10th Cir. 2007). For example, "proof of an existing policy which itself constitutes discrimination," is direct

evidence of discrimination. *Hall* at 854-55; *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1477 (10th Cir. 1996).

In this case, the EEOC argued that *McDonnell Douglas* does not apply because there is direct evidence that Haji was denied religious accommodation. [Doc. 117, at 13-14]. As discussed above, Haji testified that she asked to wear a hijab at work and was denied this accommodation. Haji's testimony, if believed, establishes Defendant denied her a religious accommodation, without requiring any inference or presumption. It is, therefore, direct evidence obviating the need to apply the *McDonnell Douglas* framework. Additionally, as the Court noted, a factual dispute remains as to whether Defendant enforced a policy of refusing to let Muslim women wear hijabs prior to 2011. [Doc. 184, at 4 n.4]. The EEOC introduced evidence of JetStream's policy that Muslim women were denied the religious accommodation of wearing a hijab. [Doc. 117, at 7]. This evidence of a discriminatory policy or practice is also direct evidence obviating the need to apply *McDonnell Douglas*.

The Court, however, did not address EEOC's direct-evidence argument, and instead relied on the *McDonnell Douglas* burden-shifting framework without adjusting it for the facts of this case. As a result, the Court dismissed the claim that Haji was denied religious accommodation, based only on the assumption that an additional adverse employment action was required. [Doc. 184, at 25, 39-40]. Accordingly, EEOC asks the Court to reconsider its ruling, as there is direct evidence that JetStream intentionally discriminated against Haji by denying her religious accommodation.

### *VI. Conclusion*

It is manifestly unjust for the Court to rule there was no undue hardship for Defendant to allow Muslim women to wear hijabs while working, but then deny Haji relief for the harm she suffered as a result of being denied that very accommodation. Additionally, reconsideration is warranted because denial of religious accommodation is itself intentional discrimination, and is not contingent on any additional adverse employment action. There is direct evidence that Haji asked to wear a hijab, and her request was denied, making the *McDonnell Douglas* framework inapplicable. But if a burden-shifting framework is applied, it should be adjusted to eliminate the need for an additional adverse action. Accordingly, the EEOC respectfully requests that the Court reconsider and reverse its decision dismissing the EEOC's claim that Milko Haji was denied religious accommodation.

*/s/ Iris Halpern*
Senior Trial Attorney
EEOC Denver Field Office
303 East 17th Avenue, Suite 410
Denver, Colorado 80203
(303) 866-1374
iris.halpern@eeoc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 27, 2015 a true and correct copy of the foregoing was served upon the following through the District of Colorado ECF System:

Mathew M. Morrison
Andrew W. Volin
Sherman & Howard, LLC
633 17th Street, Suite 3000
Denver, CO  80202
Telephone:  303-299-8086
Facsimile:  303-298-0940
avolin@@shermanhoward.com
mmorrison@shermanhoward.com

Attorneys for Defendant

Diane S. King
Hunter A. Swain
1670 York Street
Denver, CO 80206
(303) 298-9878 telephone
(303) 298-9879 facsimile
king@kinggreisen.com
swain@kinggreisen.com

Attorneys for Plaintiff/Intervenors

                                                *s/ Iris Halpern*
                                                Iris Halpern
                                                Senior Trial Attorney