IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02340-CMA-KMT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
    Plaintiff,
and
SAFIA ALI ABDULLE, et al.,
    Plaintiff/Intervenors,
v.
JETSTREAM GROUND SERVICES, INC.,
    Defendant.

_____

**DEFENDANT'S RESPONSE
TO EEOC'S MOTION FOR RECONSIDERATION [DOC. #185]**
_____

JetStream's Motion for Summary Judgment argued that a plaintiff asserting a failure to accommodate claim under Title VII must demonstrate that he or she was fired, or suffered some other adverse employment action, in connection with the denial of an accommodation, and thus, the EEOC could not maintain a religious accommodation claim on behalf of Milko Haji "because Haji suffered no adverse employment action." Doc. #83 at 10, 12.[1] The EEOC admits that it did not address this issue in its summary judgment briefing. Doc. #185 ("Motion") at 2, n.2. This admission is not quite accurate; the EEOC actually conceded in its summary judgment response that a "*prima facie*

---

[1] In its summary judgment order, the Court mistakenly stated that JetStream did not argue that Haji's accommodation claim should be dismissed based on the lack of an adverse employment action. See Doc. #184 at 35. As noted, JetStream explicitly made such an argument. Doc. #83 at 12; see also Doc. #130 at 10, n.3 (noting that EEOC failed to address the adverse action issue in its summary judgment response and Haji's failure to accommodate claim should, therefore, be dismissed).

religious accommodation claim requires the plaintiff to prove . . . he or she suffered an adverse employment action." Doc. #117 at 14. As noted by this Court, the EEOC then argued (albeit while addressing Haji's retaliation claim) that Haji did suffer an adverse action, an argument which the Court rejected. Doc. #184 at 36.

Now, however, the EEOC attempts to reverse course, presenting new arguments that it could have presented in its original briefing. It now argues that it was not required to prove an adverse employment action because "denial of religious accommodation is itself intentional discrimination." Motion at 15. Thus, according to the EEOC, the Court committed "clear error" when it failed to adjust the elements of the EEOC's *prima facie* case to eliminate any adverse action requirement, and then dismissed Haji's accommodation claim for lack of any adverse action. Id. at 2. It also argues that the Court erred because "the McDonnell Douglas framework" and its *prima facie* adverse action requirement should not have been applied at all, based on a new argument that there is "direct evidence" of discrimination because Haji was denied an accommodation.

These new arguments must be rejected on procedural grounds as well as the merits. Procedurally, a motion for reconsideration must be denied if it presents new arguments that could have been made during the initial briefing, and on this basis alone, the EEOC's Motion fails. Furthermore, under the "invited error" doctrine, the Court need not consider the EEOC's new arguments because, on summary judgment, the EEOC "invited" any purported error by actually asserting that a *prima facie* religious accommodation claim requires proof of an adverse action. On the merits, the EEOC has not shown "clear error" or "manifest injustice." The EEOC cites no controlling law

supporting its arguments. On the contrary, controlling precedent requires dismissal of Haji's claim. In addition, even though the EEOC cites some non-binding court decisions permitting accommodation claims without proof of an adverse action, other courts expressly require such proof. This divergence of authority, along with the lack of any controlling law in support of the EEOC's Motion, foreclose any argument that the Court committed "clear error," or that "manifest injustice" has occurred.

**LEGAL STANDARD**

As noted by the EEOC, "grounds warranting a motion to reconsider include . . . the need to correct clear error or prevent manifest injustice." Motion at 3 (*citing* Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000)). However, "in order to show clear error or manifest injustice, the movant must base her motion on arguments that were previously raised but overlooked by the Court." Ramsey v. Mansfield, 2008 WL 878946,*2 (D. Colo. 2008). Thus, a motion asserting clear error or manifest injustice must be denied if it merely rehashes old arguments that have already been addressed, or raises new issues that could have been raised in prior briefing. Servants of the Paraclete, 204 F.3d at 1012; Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc., 115 F. Supp.2d 1250, 1256 (D. Colo. 2000) (a "motion to reconsider is not at the disposal of parties who want to 'rehash old arguments'"). See also Moore's Fed. Practice, § 56.124 (2015) ("Reconsideration will not be granted to relitigate . . . arguments that were raised, or should have been raised, on the original motion"). Accordingly, when a motion to reconsider relies on a new argument that could have been presented in an earlier briefing, this Court refuses to consider the new argument and denies the motion. See,

3

*e.g.*, Gargano v. Owners Ins. Co., 2014 WL 3843786, *3 and n.6 (D. Colo. 2014) (denying motion to reconsider because, regardless of merits of new argument, plaintiff "could have, but chose not to advance this argument in her prior briefing"); United States v. Rodriguez-Martinez, 2009 WL 2372850, *1–2 (D. Colo. 2009) (where motion to reconsider raised arguments that could have been raised in earlier pleading, motion was "properly denied on that basis" alone). See also Madrigal v. Ingredient Rest., 2013 WL 162089, *1 (D. Kan. 2013) (reconsideration is unavailable to "a party [that] failed to present its strongest case in the first instance. Improper use of motions to reconsider can waste judicial resources and obstruct the efficient administration of justice."). Furthermore, when a motion asserts that a court erred by adopting a proposition that the movant induced the court to adopt, the "invited error" doctrine requires that the motion be denied. United States v. DeBerry, 430 F.3d 1294, 1302 (10th Cir. 2005).

Even if a motion to reconsider is properly presented, reconsideration "is an extreme remedy to be granted in rare circumstances." Ramsey, 2008 WL 878946 at *1. Thus, mere "disappointment of the losing party" does not demonstrate clear error and manifest injustice." Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir 2000). Rather, reconsideration on the grounds of clear error or manifest injustice "is appropriate only where the court has misapprehended the facts [or] a party's position" – and the EEOC does not allege any such misapprehension in this case – "or the controlling law." Chung v. El Paso Sch. Dist., 2015 WL 4456204, *1 (D. Colo. 2015). As explained below, even if the Court considers the merits of the EEOC's new arguments, the EEOC has not identified any controlling law demonstrating "clear error" or "manifest injustice." See In

re Level 3 Commc'n, Inc., 2009 WL 1542723, *1 (D. Colo. 2009) (motion denied where it failed to identify any "controlling precedent demonstrating a manifest error of law").

**ARGUMENT**

**I.    The Motion Must Be Denied Because It Relies Entirely on New Arguments that the EEOC Should Have Made Earlier.**

The EEOC's Motion relies entirely on one argument: the Court committed a clear legal error when it held that a failure to accommodate claim requires proof of an adverse employment action, and dismissed Haji's claim on that basis. The EEOC's Motion begins by asserting that Haji requested and was denied an accommodation to wear a hijab and, because accommodating a hijab posed no undue hardship to JetStream, it was "manifestly unjust" to dismiss her accommodation claim. Motion at 3–5. This assertion is entirely dependent on the EEOC's new argument that, "as a matter of law," denial of an accommodation need not be accompanied by any additional adverse action.[2] The EEOC then devotes the most of its Motion to this new argument that an adverse employment action is not a necessary element of an accommodation claim. Motion at 5–12. Finally, the EEOC's Motion concludes by asserting that the Court erred in applying the McDonnell Douglas framework and its *prima facie* adverse action requirement because "there is direct evidence that Haji was denied religious accommodation," which – again – is dependent on the EEOC's new argument that an adverse action is not an element of a failure to accommodate claim.  Motion at 14.

---

[2] In other words, even if Haji was denied an accommodation that posed no undue hardship, the EEOC can only show that it was "manifestly unjust" to dismiss her claim if it can also show that the Court ignored controlling law and committed clear legal error when it held that the denial of the accommodation also must be accompanied by some adverse employment action.

5

The Court must refuse to consider the EEOC's new adverse action argument, as the EEOC could have raised it on summary judgment, but failed to do so. As noted, JetStream's summary judgment motion argued that Haji could not assert a failure to accommodate claim because she did not suffer any adverse employment action in connection with the denial of an accommodation. In dismissing Haji's claim, the Court correctly noted that the EEOC had an opportunity to address this basis for dismissal. Doc. #184 at 36. The EEOC admits it failed to do so. Motion at 2, n.2. Now, however, the EEOC belatedly argues that there is no adverse action requirement applicable to Haji's accommodation claim. This is just the sort of new argument which "could have been raised in prior briefing," and which this Court routinely refuses to consider as a basis for a motion to reconsider. See Servants of the Paraclete, 204 F.3d at 1012 ("[I]t is not appropriate [on a motion to reconsider] to advance arguments that could have been raised in prior briefing."). See also Legal Standard, supra (citing additional cases).[3]

The EEOC's argument concerning the Court's purported error in applying the McDonnell Douglas framework and its *prima facie* adverse action requirement is also completely different than the one presented in its summary judgment brief. On summary judgment, the EEOC argued that JetStream's "*no-skirt*" policy was direct evidence of

---

[3] The EEOC admits that it failed to include any argument regarding the applicability of an adverse action requirement in its original briefing, but argues that the Court may consider new arguments that are "purely legal," citing Proctor & Gamble v. Haugen, 222 F.3d 1262, 1271 (10th Cir. 2000). Motion at 2, n.2. Haugen is inapplicable; it did not address the standard used by district courts when confronted with a motion to reconsider, but rather an appellate court's ability to address the "unusual circumstance" in which a party failed to previously raise a purely legal issue, the outcome of which "is certain" and "beyond doubt." 222 F.3d at 1271. See also Burnette v. Dresser Indus., Inc., 849 F.2d 1277, 1285 (10th Cir. 1988) (arguments first raised in motion to reconsider, and thus not considered by trial court, will not be addressed on appeal).

discrimination, which eliminated the need to refer to McDonnell Douglas. Now, however, the EEOC identifies different direct evidence: the alleged denial of Haji's hijab accommodation request and an alleged "*no-hijab*" policy. Motion at 14. Similarly, on summary judgment, the EEOC argued that direct evidence made it "irrelevant whether Haji . . . requested an accommodation." Doc. #117 at 14. However, now the EEOC argues that Haji's alleged accommodation request is not irrelevant and is, instead, direct evidence that makes an adverse action requirement irrelevant. Motion at 14. Further, as noted above, the EEOC's McDonnell Douglas argument still depends on the notion that there is no adverse action requirement for accommodation claims, which is itself an argument not previously raised.[4] Accordingly, because the EEOC relies entirely on new arguments that could have been raised in its original briefing, its Motion must be denied.

## II. The Invited Error Doctrine Requires Denial of the EEOC's Motion.

The EEOC's Motion presents an adverse action argument that is not only new, but also contrary to the EEOC summary judgment response, in which the EEOC conceded that a *prima facie* religious accommodation claim requires the plaintiff to prove an adverse employment action. Doc. #117 at 14. Indeed, the EEOC then argued that Haji did suffer an adverse action. Id. at 20–22. The EEOC, therefore, invited and

---

[4] In addition, the Court has already addressed the EEOC's McDonnell Douglas argument, noting that even if there has been a failure to accommodate (*i.e.*, the "direct evidence" now cited by the EEOC), a modified McDonnell Douglass framework with an adverse action requirement still applies. Doc. #184 at 25, 31, n.19 (*citing* Thomas V. Nat'l Ass'n of Letter Carriers, 225 F.3d 1149, 1155 (10th Cir. 2000) (noting that although Congress made it unlawful to deny accommodation, such claims are still analyzed under modified McDonnel Douglas framework)). Thus, the EEOC merely "rehashes old arguments" already addressed by the Court, which the Court should not consider a second time. Nat'l Bus. Brokers., 115 F. Supp.2d at 1256.

7

helped induce the same "error" that it now argues against, and under the "invited error" doctrine, its Motion should be denied. DeBerry, 430 F.3d at 1302 ("Having induced the court to rely on a particular erroneous proposition of law or fact, a party may not at a later stage use the error to set aside the immediate consequences of the error. In other words, the invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged [it] to adopt") (citation omitted).

### III.   The EEOC Has Not Shown Clear Error or Manifest Injustice.

Even if the Court considers the EEOC's new arguments, the EEOC cannot show clear error or manifest injustice because (1) it has not cited any controlling law or precedent supporting its arguments, (2) controlling precedent from the Tenth Circuit and Supreme Court actually support dismissal of Haji's claim, and (3) even if a handful of courts in other circuits have held that an adverse action is not required for a failure to accommodate claim, other courts have expressly held there is an adverse action requirement, causing a split in authority preventing any finding of "clear error."[5]

First, the EEOC argues that Title VII's "plain language" makes it a violation of the statute to deny a reasonable religious accommodation, and no other adverse action is required. Motion at 5. The EEOC relies on this Court's citation to Pinsker v. Joint Dist. No. 28J of Adams and Arapahoe Cnties., 735 F.3d 388, 390 (10th Cir. 1984), as well as TWA v. Hardison, 432 U.S. 63, 74 (1977), and notes that, in both cases, the courts held that Title VII's definition of "religion" makes it unlawful for an employer to deny a reasonable accommodation, short of undue hardship. Motion at 5–6. Thus, according

---

[5] As noted above, the EEOC's "manifest injustice" argument is simply based on "clear error" by the Court. See fn. 2, supra.

to the EEOC, Title VII's "plain language" makes it unlawful to refuse a reasonable accommodation, regardless of whether any adverse employment action occurs.

The EEOC's argument must be rejected because neither Pinsker nor Hardison addressed, much less decided, whether a failure to accommodate claim requires evidence of an adverse action.[6] Moreover, the Tenth Circuit has since analyzed Pinsker, Hardison, and the Title VII language cited in both cases (and in the EEOC's Motion), and concluded that a failure to accommodate claim requires proof of an adverse employment action. Toledo v. Nobel-Sysco, Inc., 892 F.2d 1481, 1486 (10th Cir. 1989). Specifically, the Tenth Circuit noted that the Title VII provisions identified in Pinsker and Hardison make it unlawful to deny a reasonable accommodation, but then joined other courts in adopting "a two-step procedure for evaluating claims and allocating burdens of proof under these [Title VII accommodation] provisions [cited in Pinsker and Hardison]." Id. This two-step procedure requires the plaintiff to make out a *prima facie* case by showing, among other things, that "he or she was not hired [or suffered some other adverse action]," and then the burden shifts to the employer to show that a reasonable accommodation was not possible without an undue hardship. Id. The EEOC has not cited any controlling Tenth Circuit precedent to the contrary and, indeed, more recent Tenth Circuit decisions have continued to follow the approach set forth in Toledo, and this controlling precedent requires dismissal of Haji's claim. See Thomas, 225 F.3d at 1154–55 (noting Title VII provisions requiring accommodation, but

---

[6] In fact, while Pinsker held the employer did not violate Title VII because it provided a reasonable accommodation, it also noted that the plaintiff's job was never "jeopardized"– *i.e.*, the plaintiff never suffered an adverse action. 735 F.3d at 390.

9

holding that "[t]o survive summary judgment on a religious discrimination claim of failure to accommodate, the employee initially bears the burden of production with respect to a *prima facie* case," which requires the employee to show that "he or she was fired [or suffered another adverse employment action]"). Indeed, as noted by this Court, Thomas provides that an employer can avoid all liability for failing to accommodate by showing that the plaintiff suffered no adverse action. Id. at 1156 (employer can avoid liability by "conclusively rebutting one or more elements of the plaintiff's *prima facie* case," which includes rebutting evidence of an adverse action); Doc. #184 at 25.

The EEOC next argues that the Supreme Court's Abercrombie decision "suggests that denial of religious accommodation is itself an adverse employment action" because the Court stated that "if an employer 'is willing to accommodate . . . [then] adverse action 'because of' religious practice is not shown.'" Motion at 6. According to the EEOC, "the converse must also be true – where the employer is *not* willing to accommodate, an adverse action *is* shown." Id. The EEOC, however, misapprehends Abercrombie and the language in the decision it cites.

Although, as the EEOC notes, Abercrombie states in a footnote that an employer who is willing to accommodate a religious practice has not taken an adverse action, the "adverse action" referenced by the Court was a hypothetical employer's refusal to hire a hypothetical employee, and the point of the Court's footnote was that, if the employee alleges that she was not hired her "because of" her religious practice (*i.e.,* that her employer took an adverse action "because of" her religious practice), then she has the burden of showing that her employer was not willing to accommodate the practice. 135

S. Ct. 2028, 2032 n.2 (2015). In other words, an employee cannot prevail on a claim that her employer refused to hire her "because of" her religious practice unless the employee can show that the employer was unwilling to accommodate the practice. The Court did not suggest that a failure to accommodate is, by itself, an adverse action.

On the contrary, Abercrombie requires dismissal of Haji's claim; it holds that there is no "freestanding" failure to accommodate claim, and the denial of an accommodation is only actionable if it is accompanied by an adverse employment action. Specifically, Abercrombie holds that a "disparate treatment" claim and a "disparate impact" claim "are the only causes of action under Title VII." Id. (*citing* 42 U.S.C. § 2000e-2(a)(1)-(2)). Further, the statute's disparate treatment provision only "forbids employers to (1) 'fail . . . to hire' an applicant [or 'to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment'] (2) 'because of' (3) 'such individual's . . . religion' (which includes his religious practice)." Id. (*citing* 42 U.S.C. § 2000e-(a)(1)). Thus, the Supreme Court concluded that "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." Id. (noting also that term "because of" in § 2000e-2(a)(1) "links the forbidden consideration [*i.e.*, religious practice] to each of the verbs [*i.e.*, adverse employment actions] preceding it," and thus Title VII only states that "an individual's actual religious practice may not be a motivating factor in failing to hire, in refusing to hire, and so on"). This Court, in fact, has already correctly recognized that Abercrombie

11

requires a plaintiff to show an adverse employment action - which, notably, the EEOC has not alleged was a "clear error." See Doc. #184 at 25.[7]

Thus, given that the EEOC cannot cite any controlling authority establishing that the Court "clearly erred" when it dismissed Haji's accommodation claim for lack of an adverse action, its Motion must be denied. See Chung, 2015 WL 4456204 at *1 (motion to reconsider must show that court misapprehended "controlling law"); In re Level 3 Commc'n, 2009 WL 1542723 at *1 (D. Colo. 2009) (motion failed to identify "controlling precedent demonstrating a manifest error of law"). Indeed, denial of the EEOC's Motion is required given that Abercrombie, Thomas, and other controlling precedent in the Tenth Circuit required the Court to dismiss Haji's claim. Rodriguez-Martinez, 2009 WL 2372850 at *1–2 (denying motion that required court to ignore controlling precedent).

The EEOC's Motion, therefore, is left to rely on a few decisions issued by courts in other circuits prior to the Supreme Court's Abercrombie decision. Even setting aside the fact that these decisions are not controlling precedent, and thus cannot support a motion to reconsider, they do not show that the Court clearly erred in applying an

---

[7] The concurring opinions in Abercrombie also confirm that the majority's decision limits failure to accommodate claims to those involving an adverse employment action, such as discharge, failure to hire, etc. See 135 S. Ct. at 2034 (Alito, J., concurring) (stating that when Title VII's provision prohibiting discrimination is combined with the provision defining religion, "the following rule . . . results: An employer may not take an adverse employment action against an applicant or employee because of any aspect of that individual's religious observance or practice unless the employer demonstrates that it is unable to reasonably accommodate that observance or practice without undue hardship) and 135 S. Ct. at 2041 (Thomas, J., concurring in part and dissenting in part) (concurring with majority opinion that "rightly puts to rest the notion that Title VII creates a freestanding religious-accommodation claim," which "appears to have grown out of statements in our cases [such as Hardison] suggesting that Title VII's definitional provision concerning religion created an independent duty [to accommodate]").

adverse action requirement to Haji's claim. Several of the cases cited by the EEOC as permitting failure to accommodate claims without evidence of an adverse employment action did, in fact, involve evidence of an adverse action. See Motion at 11 (*citing* Protos v. VW of Am., Inc., 797 F.3d 129, 132–34 (3d Cir. 1986) (plaintiff discharged for failing to work on Saturdays); Nottelson v. Smith Steel Workers, 643 F.2d 445, 448 (7th Cir. 1981) (claim against employer and union for not accommodating plaintiff's objection to paying union dues was prompted by plaintiff's expulsion from union and discharge by employer for refusing to pay dues). Most of the remaining decisions cited by the EEOC are older cases from the Ninth Circuit, see Motion at 7–8, 11 (citing APWU, Tooley, and Burns), but even before the Abercrombie decision, these cases were no longer good law. See Lawson v. Washington, 296 F.3d 799, 804–05 (9th Cir 2002) (affirming dismissal of failure to accommodate claim because plaintiff failed to show he suffered an adverse action), *reh'g en banc denied*, 319 F.3d 498 (9th Cir. 2003).

To the extent the remaining decisions cited by the EEOC hold that no adverse action is required for an accommodation claim, they do not provide a basis for granting the EEOC's Motion. The cases are not controlling precedent, and they actually conflict with Abercrombie and Thomas, which as recognized by the Court, require proof of an adverse action. Doc. #184 at 25. Moreover, several circuits reject the approach taken in the EEOC's cited decisions, and expressly hold that an adverse action is required. See Lawson, 296 F.3d at 804–05; Reed v. UAW, 569 F.3d 576, 580 (6th Cir. 2009) (holding that accommodation claim requires proof of *prima facie* case, and "declin[ing] to relieve a religious accommodation plaintiff of his burden to establish a *prima facie* case,

13

including the requirement that he has been discharged or disciplined"); Jones v. TEK Indus., 319 F.3d 355, 359–60 (8th Cir. 2003) (affirming jury verdict that rejected accommodation claim due to finding of no adverse action); Leifer v. N.Y. State Div. of Parole, 2010 WL 3292937, *1 (2d Cir. 2010) (dismissing claim due to no adverse action); Ellington v. Murray Energy, 2010 WL 3855277, *8–10 (D. Utah 2010) (same). This split in authority forecloses any argument that the Court made a "clear error" when it dismissed Haji's claim. See, e.g., Osorio v. Korge, 2013 WL 9958979, *9 (S.D. Fla. 2013) (no "clear error" where split of authority and no controlling precedent).[8]

Finally, the EEOC argues the Court erred by applying "the McDonnel Douglas framework" and its *prima facie* adverse action requirement, as there is "direct evidence" of discrimination (*i.e.*, the alleged denial of Haji's request to wear a hijab, and an alleged "no-hijab" policy). Motion at 14. This argument must be rejected for several reasons.

First, the EEOC does not cite any authority holding that evidence of an employer's refusal to accommodate is "direct evidence" obviating the need to establish

---

[8] The EEOC makes two additional arguments that are easily rejected. First, it argues that religious accommodation cases should be treated like hostile work environment claims, which "are not limited to 'economic' or 'tangible' harm." Motion at 8. The EEOC cites no authority in support of this argument, much less any controlling law or precedent that the two claims should be treated alike. Nor does it explain how its argument can be reconciled with Abercrombie and the Tenth Circuit's accommodation decisions. See also Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (hostile work environment claim is only actionable if the offending conduct is so severe or pervasive that it affects work performance or creates hostile and intimidating environment). Secondly, the EEOC argues that the Court should have been "guided by analogous claims under the ADA," and cites to some decisions outside the Tenth Circuit in which courts suggested that a disability accommodation claim does not require an adverse action. Motion at 9. Again, the EEOC ignores Abercrombie and Tenth Circuit precedent, which do require an adverse action for religious accommodation claims. It also cites no controlling law for the proposition that a purported lack of an adverse action requirement the ADA requires that Title VII be applied in the same manner.

a *prima facie* case involving an adverse action; the EEOC only cites decisions discussing direct evidence in the age and gender discrimination, retaliation, and failure to hire context, not the religious accommodation context, and none of the cited decisions address whether "direct evidence" of discrimination eliminates a claim's adverse action element. Motion at 12–14. Secondly, Thomas establishes that McDonnell Douglas and its *prima facie* adverse action requirement apply even if an accommodation has been denied. 225 F.3d at 1154–56. Third, the EEOC's new suggested approach - that McDonnell Douglas may be disregarded when there is "direct evidence" showing an accommodation was requested and denied - would relieve a plaintiff of the need to prove a bona fide religious belief that conflicts with an employment requirement, a *prima facie* element under the McDonnell Douglass framework that is indisputably an essential element of any accommodation claim. The adverse action requirement should be treated no differently. Finally, as this Court has correctly recognized, Abercrombie, Thomas, and other decisions identified above establish that a failure to accommodate claim *always* requires an adverse action. Abercrombie, 135 S. Ct. at 2032; Thomas, 225 F.3d at 1154–56 (employer avoids liability for failing to accommodate by showing plaintiff suffered no adverse action); Doc. #184 at 25. The EEOC's new McDonnell Douglas argument must be rejected.

## **CONCLUSION**

For all of the foregoing reasons, the EEOC's Motion must be denied in its entirety.

Respectfully submitted this 20th day of November, 2015.

                                                      s/ *Matthew M. Morrison*
                                                      Andrew W. Volin
                                                      Matthew M. Morrison
                                                      633 Seventeenth Street, Suite 3000
                                                      Denver, CO  80202
                                                      Telephone: (303) 297-2900
                                                      E-Mail: avolin@shermanhoward.com
                                                      E-Mail: mmorrison@shermanhoward.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of November, 2015, I filed the foregoing **DEFENDANT'S RESPONSE TO EEOC'S MOTION FOR RECONSIDERATION** electronically through the CM/ECF system, which caused the following individuals to be served by electronic means:

Iris Halpern, Esq.
Hillary Valderrama, Esq.
Wasan A. Awad, Esq.
Equal Employment Opportunity Commission
Denver Field Office
303 E. 17th Ave., Suite 410
Denver, CO 80203
Iris.halpern@eeoc.gov
hillary.valderrama@eeoc.gov
wasad.awad@eeoc.gov

Diane S. King, Esq.
Hunter Swain, Esq.
1670 York St.
Denver, CO 80206
king@kinggreisen.com
swain@kinggreisen.com

*s/ Louisa Boyte*