**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02340-CMA-KMT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

SAFIA ABDULLE ALI,
SAHRA BASHI ABDIRAHMAN,
HANA BOKKU,
SADIYO HASSAN JAMA, and
SAIDA WARSAME, a/k/a AMINO WARSAME,

    Plaintiff Intervenors,

v.

JETSTREAM GROUND SERVICES, INC.,

    Defendant.

---

**ORDER DENYING MOTION FOR JUROR QUESTIONNAIRE**

---

This matter is before the Court on Plaintiffs' Motion for a Juror Questionnaire. (Doc. # 205.) For the reasons explained below, the Court denies the instant Motion.

### I. BACKGROUND

Plaintiff Equal Employment Opportunity Commission and Plaintiff-Intervenors (Safia Ali Abdulle, Sahra Bashi Abdirahman, Hana Bokku, Sadiyo Hassan Jama, and Amino Warsame) jointly request[1] that a juror questionnaire be mailed to the venire in

---

[1] The Court will refer to both the EEOC and the Plaintiff-Intervenors as "Plaintiffs."

advance of *voir dire*. (*Id.* at 1.) Defendant opposes the requested relief, but has not filed a specific response in opposition at this juncture. (*Id.* at 2.)

Plaintiffs' proposed questionnaire is eleven pages long and composed of 43 questions, many of which constitute standard *voir dire* questions about a potential juror's background (e.g., questions relating to a juror's occupation, number of children, prior jury service, previous involvement in litigation, etc.). The proposed questionnaire also contains case-specific questions, including the following examples (with the answer format provided by the questionnaire listed in parentheses):

> Do you agree or disagree with the statement that an employer is right to tell an employee not to engage in a religious practice at work if it makes it more difficult for the employer to enforce rules uniformly for all workers? (Yes, No, "Please tell us more")
>
> Do you agree or disagree with the statement that employees who want to work in this country should have to obey the workplace rules of an employer regardless of their religion? (Agree, Disagree, "Please tell us more")
>
> Do you think employers should not have to accommodate an employee's religious beliefs? (Yes, No, "Please tell us more")
>
> Do you know anyone who is Muslim? (Yes, NO, "If YES, please describe how you know the person(s) and your relationship")
>
> What do you know about the religion of Islam? (Open ended)
>
> Do you have any negative feelings about Muslims? (Yes, No, "Please tell us more")
>
> Do you think the Muslim religion can be excessive? (Yes, No, "Please tell us more")
>
> Do you think the United States should not allow any refugees from Muslim countries into the United States? (Yes, No, "Please tell us more")

>Do you think Muslim immigrants should be restricted from working on or near airplanes?  (Yes, No, "Please tell us more")
>
>How do you feel about immigrants who wear religious or ethnic clothing instead of American clothing?  (Yes, No, [sic] "Please tell us more")
>
>Do you believe that immigrants are hurting America's economy?  (Yes, No, "Please tell us more")
>
>Do you agree or disagree with the statement that immigrants fortunate enough to come to this country and work here should adopt American values and conform with American culture?  (Yes, No, "Please tell us more")
>
>Do you believe immigrants are having a negative impact on America's values or traditions?  (Yes, No, "Please tell us more")
>
>Do you believe that immigrants to this country should be required to speak English fluently?  (Yes, No, "Please tell us more")
>
>Do you know anyone who is an immigrant from an African country?  (Yes, No, "If YES, please describe how you know the person(s) and your relationship")
>
>Do you have any negative feelings about immigrants from African countries where terrorist organizations may also operate?  (Yes, No, "Please tell us more")

(Doc. # 205-1 at 5–9.)

Plaintiffs argue that because Plaintiff-Intervenors are Muslim immigrants bringing a religious discrimination claim, they face a greater degree of prejudice and/or bias from potential jurors than the average civil plaintiff, particularly in light of recent news events, including terrorist attacks (in Paris, the United States, and elsewhere), and the anti-Muslim and anti-immigrant rhetoric surfacing in the United States presidential elections. (Doc. # 205 at 4–5.)  They also assert that the Court's standard *voir dire* procedures will be insufficient to uncover such prejudice and/or bias because jurors "will likely respond

more candidly to questions about sensitive past events or their prejudices via a private, confidential written questionnaire than by answering orally in open court before strangers." (*Id.* at 1, 7.) Additionally, they contend that a juror questionnaire sent ahead of *voir dire* "is an efficient means to gather background information so that the Court and all parties can use the limited time *voir dire* time effectively and efficiently." (*Id.* at 7.) Finally, the EEOC also notes that in one of its prior cases in the District of Arizona, it obtained approval to use a juror questionnaire and that "[b]ased on the responses it received, the Judge dismissed 24 of the 48 respondents for cause without requiring even that these individuals report to court on the day of trial." (*Id.* at 6.)

## II. ANALYSIS

### A. Legal Standard

Rule 47 of the Federal Rules of Civil Procedure provides that "The court may permit the parties or their attorneys to examine prospective jurors or may itself do so. If the court examines the jurors, it must permit the parties or their attorneys to make any further inquiry it considers proper, or must itself ask any of their additional questions it considers proper." Fed. R. Civ. P. 47(a). "[D]istrict courts have broad discretion in fashioning . . . the jury selection procedure in general." *United States v. Morris*, 623 F.2d 145, 151 (10th Cir. 1980) (citations omitted). Specifically, it is well-established that "*voir dire* is within the sound discretion of the trial court, and the court's exercise of that discretion will not be disturbed, absent a clear showing of abuse." *United States v. Whitt*, 718 F.2d 1494, 1497 (10th Cir. 1983); *see also United States v. Gibbons*, 607 F.2d 1320, 1330 (10th Cir. 1979) ("The trial court has broad discretion in conducting the

*voir dire* examination"); *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991) (a trial court has "great latitude in deciding what questions should be asked on *voir dire*"); *Rosales–Lopez v. United States,* 451 U.S. 182, 189 (1981) ("Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he [or she] must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the *voir dire.*"). So long as a court fulfills its role during *voir dire* to "test the qualifications and competency of the prospective jurors," and "the tests employed **reasonably assure** that prejudice, if present, would have been discovered," *United States v. Bedonie*, 913 F.2d 782, 795 (10th Cir. 1990) (emphasis added), it is within the court's discretion to decline submission of a juror questionnaire that the court finds unduly invasive or simply unnecessary.

## B. Application

The Court agrees that, given the nature of the claims asserted here, the *voir dire* examination will require the venire be questioned carefully and fully regarding any potential anti-immigrant and/or anti-Muslim bias. However, juror questionnaires are enormously time-consuming, including for the potential jurors who must answer them,[2] and the Court does not believe that the benefits of such a questionnaire justify the costs in light of the circumstances presented in the instant case.

---

[2] The proposed questionnaire involved here, standing at 11 pages, could also discourage jurors from reporting for service in the first place. *See Marsh Supermarkets, Inc. v. Marsh*, No. 1:09-CV-458-SEB-TAB, 2013 WL 53788, at *1 (S.D. Ind. Jan. 3, 2013) (denying requested six-page questionnaire in part because it "create[d] the additional risk that some, perhaps even many, of the prospective jurors will be deterred from jury service, seeking to be excused prior to the morning of trial in order to avoid having to answer difficult, perhaps obtuse and/or needlessly intrusive questions.")

In particular, although the proposed questionnaire could "flag" particular, potentially biased jurors for the attorneys, it is highly unlikely that any juror would provide the level of detail necessary in his or her responses for a party to make an adequate challenge for cause based on the questionnaire alone. For example, it is difficult for the Court to imagine how a potential juror could answer questions like, "What do you know about the religion of Islam?," "Do you have any negative feelings about Muslims?," or "Do you think the Muslim religion can be excessive?," in a comprehensive manner, especially if such answers might be indicative of bias. *See Marsh Supermarkets, Inc. v. Marsh*, No. 1:09-CV-458-SEB-TAB, 2013 WL 53788, at *1 (S.D. Ind. Jan. 3, 2013) (denying to issue requested questionnaire in part because "[m]any of the [proposed] questions cannot be answered in a few words or a single sentence and would be more likely to confuse and frustrate the respondents than provide useful insights"). Accordingly, the attorneys (and/or the Court) would be required to reiterate the questions and also to ask for additional details and clarification, such that the questionnaire would result in negligible time savings, at best, during jury selection.[3] *See* Joseph A. Colquitt, *Using Jury Questionnaires; (Ab)using Jurors*, 40 CONN. L. REV. 1, 18-19 (2007) ("Although questionnaires are intended to expedite the process and better enable the litigants to make educated juror selections, the latter objective has the potential to swallow the former goal. For example, one prominent treatise on jury selection advises litigants that '[y]ou should re-ask as many of the questions [on the

---

[3] As a practical matter, the fact that the lawyers would still be required to follow up and examine at least most of the potential jurors also lessens the questionnaire's purported advantages of preserving privacy and encouraging candor.

questionnaire] as the court will tolerate.'  It is difficult to see efficiency arising from questionnaires that will simply lead to repetition . . . during *voir dire*"); *United States v. Jackson,* 863 F. Supp. 1449, 1459 (D. Kan. 1994) (emphasis added) ("In the typical case, a written questionnaire works a significant savings in time only if the prospective juror's written responses are made under penalty of perjury and can **substitute for** the oral *voir dire*.").

      Moreover, although the Court certainly recognizes Plaintiffs' legitimate concerns about whether jurors will be forthright in discussing the sensitive issues implicated here, it finds that its standard oral *voir dire* procedures, which it will modify in light of Plaintiff's Motion, are adequate to address these concerns and to "reasonably assure that prejudice, if present, [is] discovered."  See *Bedonie*, 913 F.2d at 795.  Specifically, the Court will repeatedly emphasize that that jurors are under oath in answering the Court's and the attorneys' questions truthfully and fully (indeed, the Court specifically tells the venire that "*voir dire*" means "to speak the truth").  It will also make every reasonable effort to create an environment which encourages and enables prospective jurors to speak openly, including by instructing jurors that they should feel free to discuss any potentially embarrassing or sensitive topics privately at the bench.  Additionally, instead of conducting its own, extended *voir dire* examination (as it usually does), the Court will conduct a basic examination of the panel, and will allow counsel for the parties 45 minutes each to supplement the Court's examination (augmented from the Court's customary allocation of 15 minutes per side).  Finally, it will permit the attorneys to

request to speak at the bench with a potential juror who they believe would be more candid in a more private setting.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for a Juror Questionnaire (Doc. # 205), but modifies its customary *voir dire* procedures as explained in this Order.

DATED:   March 22, 2016

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge
