**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02340-CMA-KMT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

     Plaintiff,

SAFIA ABDULLE ALI,
SAHRA BASHI ABDIRAHMAN,
HANA BOKKU,
SADIYO HASSAN JAMA, and
SAIDA WARSAME, a/k/a AMINO WARSAME,

     Plaintiff Intervenors,

v.

JETSTREAM GROUND SERVICES, INC.,

     Defendant.

---

**ORDER GRANTING PLAINTIFFS' MOTION IN PART TO COMPEL DEFENDANT TO
PRODUCE DAVID NORRIS AT TRIAL, OR ALTERNATIVE RELIEF, AND REQUEST
FOR EXPEDITED RULING**

---

This matter is before the Court on Plaintiff EEOC's and Plaintiff-Intervenors

(Plaintiffs') Motion to Compel Defendant to Produce David Norris at Trial, Or Alternative

Relief, and Request for Expedited Ruling.  (Doc. # 212.)  For the reasons provided

below, the Court grants the instant Motion in part.

The instant Motion indicates that Defendant Jetstream Ground Services

(Jetstream) informed Plaintiffs' counsel on March 4, 2016, just a little over one month

before a jury trial is set to commence in this case, that it "cannot guarantee" the attendance of witness David Norris at trial.[1]  This is despite the fact that Mr. Norris was included in Defendant's "will-call" witness list as a "witness[] who **will be present at trial**" on the Final Pretrial Order governing this case,[2] entered almost a year ago, on May 12, 2015 (he also appeared on Plaintiffs' "may-call" witness list) (Doc. # 147 at 24, 25) (emphasis added).  Defendants have provided no explanation as to why Mr. Norris suddenly will not attend.  (*See* Doc. # 220.)  Accordingly, the instant Motion requests that the Court compel his presence at trial, or, in the alternative, either allow Plaintiffs to take a deposition in advance of trial (to be shown at trial) or order Mr. Norris to testify during trial via remote, contemporaneous transmission.  (Doc. # 212 at 1.)

Although the parties hotly contest the actual extent of Mr. Norris' alleged role in the hiring and decision-making process in the instant case, a few crucial facts are not in dispute, to wit: (1) Mr. Norris is the Vice-President and co-owner of a majority of Jetstream, and he still owns and works for Jetstream (Doc. # 212-1); (2) Defendant's own attorneys note that "the central dispute in the in the instant case" is Jetstream's motives for its decision not to hire Plaintiffs (Doc. # 220 at 3); (3) Plaintiffs wore

---

[1] Defendant's Response speaks in the same evasive terms, noting, for example, that Mr. Norris "may voluntarily decline to appear for trial."  (Doc. # 220 at 5.)

[2] On March 23, 2016, the Court granted the parties' Joint Motion for leave to file an amended Final Pretrial Order, to reflect recent stipulations to which they had agreed, including the settlement of one of Plaintiffs' claims. (*See* Doc. # 219.)  The parties have not yet submitted a revised Final Pretrial Order reflecting these changes.  However, because any changes the Final Pretrial Order authorized by the Court in its March 23, 2016 Order did not pertain to the witness list implicated here, the Court does not construe that Order as vacating the **entire** Final Pretrial Order, but rather, vacating only those parts that the parties agreed to change in light of their stipulations. (*Id.*)  As such, the portions of the original Final Pretrial Order (Doc. # 147) pertaining to witnesses still govern this case for purposes of the instant Motion.

headscarves during their interviews; (4) Mr. Norris interviewed at least three of the

Plaintiffs who were not hired by Jetstream, at least in part because – as JetStream itself

explained (at least at one point in this lawsuit)[3] – Plaintiffs purportedly did not perform

very well **in their interviews with Mr. Norris**, specifically:

> **JetStream evaluated applicants based on how well they conducted themselves during their interviews**, whether they had relevant cleaning experience, whether they could provide their own transportation to DIA, **whether they expressed a willingness to change their work schedules and rate of pay, and whether they would accept JetStream's work standards, including its religiously neutral and gender neutral uniform requirements**. Applicants were also required to pass a drug test and an airport security screening before being hired. Like all of the applicants, the Charging Parties were evaluated based on these factors.

> Sadiyo Jama and Hana Bokku were not hired because **they had scheduling conflicts that JetStream could not accommodate, and they both showed little enthusiasm or interest in working for JetStream during their interview.** Amino Warsame was not hired because a **dispute arose during her interview** regarding the rate of pay that she would accept and whether she had adequate experience as a cabin cleaner. Safia Ali was not hired because **she refused to abide by JetStream's uniform policy.** Sahra Abdirahman **demanded during her interview** that JetStream pay for her RTD bus pass, a benefit that JetStream was not prepared to provide, and she failed to complete a required drug test.

(Doc. # 84-6 at 2-3) (emphasis added); (5) Mr. Norris is alleged to have made

derogatory comments about Muslim women who wear hijabs to multiple JetStream

employees, including telling employee Michael Maina that such women "should be fired

because they looked like 'terrorists,'" and employee Brenda Holan that he "'did not care

if the reason [for wearing hijabs] was 'religion' or not. Female cabin-cleaners would not

---

[3] Jetstream, however, now claims that Mr. Norris' interviews played no role at all in its decision not to hire the Plaintiffs. (*See* Doc. # 220 at 2–3.)

be allowed to wear headscarves, 'no ifs, ands, or buts,' and he wanted 'none of this headscarf garbage.  We're not putting up with any of that.'" (Doc. ## 117-14, ¶¶ 1-2, 10-11; 117-15 ¶¶ 16, 17, 19); (6) Plaintiffs did not depose Mr. Norris about these derogatory statements at least in part because they only found out about them (or were only able to obtain declarations about them) after Mr. Norris' deposition;[4] (7) Mr. Norris currently lives in Florida and has lived there continuously throughout the course of this litigation (as such, he lives more than 100 miles from the District of Colorado's courthouse); and (8) Defendants have not sought leave to amend the Final Pretrial Order to **remove** Mr. Norris as a "will-call" witness.

Although Plaintiffs point to two cases in which a district court outside of the Tenth Circuit utilized its inherent equitable power to compel a party witness to attend a trial,

---

[4] Specifically, Plaintiffs' Motion argues that showing Mr. Norris' existing videotaped deposition at trial would be prejudicial at least in part because Plaintiffs were not able to obtain critical statements from witnesses Brenda Holan and Michael Maina regarding Mr. Norris' allegedly derogatory comments to Holan and Maina until **after** his deposition, and thus were unable to question Mr. Norris about these statements.  (Doc. # 212 at 5–6.)  In response, Defendants essentially make an estoppel-esque argument, countering that the Court should not allow a trial deposition or order Defendants to make Mr. Norris available to testify because "Plaintiffs **had this information** before the deposition, as shown by the fact that, during the deposition, **Norris was asked questions derived straight from Holan's declaration** . . . [and] **Norris also testified about other topics raised in both** t**he Holan and Maina declarations**, including derogatory remarks about headscarves, or concerns about the reactions of airline passengers." (Doc. # 220 at 3–4) (emphasis added).  The Court finds Jetstream's choice of language to be, to say the least, problematic; that Mr. Norris testified about "other topics raised" in the Maina declaration or testified about material purportedly "derived . . .from" the Holan or Maina declarations **in no way** shows that Plaintiffs were able to ask Mr. Norris **about the specific statements they wish to ask him about at trial**.  Likewise, although JetStream faults Plaintiffs for failing to reopen Norris' deposition while the discovery period was open (Doc. # 220 at 7), it would have made no sense for them to do so, as they **reasonably anticipated**, given Mr. Norris' "will-call" status in the Final Pretrial Order, that they would be able to cross-examine him at trial about these statements.  Similarly, that Plaintiffs originally chose to depose Mr. Norris by videotape "because they knew they could not force him to appear at trial" is utterly irrelevant (Doc. # 220 at 5), because he was deposed on July 11, 2014, more than a year before the final pretrial order was entered on May 12, 2015, in which Mr. Norris was designated a "will call" witness by JetStream.  (Doc. ## 147; 212-4 at 1.)

this Court does not believe, particularly in light of the 2013 amendments to Rule 45 of

the Federal Rules of Civil Procedure, that it can grant the instant Motion on this basis

alone.[5]  Additionally, perhaps because this particular litigation tactic at least appears to

be seldom used, the Court was unable to find a case in the Tenth Circuit that was

directly on point after the 2013 Amendments to the Rules (i.e., a case in which a party

lists a witness as a "will-call" witness in the final pretrial order and, after the discovery

deadline passes, informs the other party, approximately a month before trial, that it may

not, in fact, produce the witness).

Nevertheless, the Court finds the principles of law guiding proposed amendments

to pretrial orders to be especially helpful in analyzing the instant Motion.  Specifically,

because Mr. Norris was listed as a "will-call" witness on the Final Pretrial Order,

JetStream's conduct in opposing the instant Motion to Compel is the

**procedural/theoretical equivalent** of a *de facto* Motion to Amend the Pretrial Order to

**remove** Mr. Norris as a witness from that Order, because the Court "interpret[s] the

---

[5] It is clear that, at least after the 2013 amendments, this Court is not authorized to compel Mr. Norris' presence under Rule 45, despite the fact that he is the Vice President and co-owner of JetStream.  Specifically, Rule 45(d)(A)(ii) provides that a court **must** quash or modify a subpoena that "requires a person to comply beyond the geographical limits specified in Rule 45(c)."  Rule 45(c)(1)(B)(i), in turn, provides that "A subpoena [for trial] may command a person to attend a trial, hearing, or deposition only as follows . . .  **within the state where the person resides, is employed, or regularly transacts business** in person, **if the person . . . is a party or a party's officer.**"  Fed. R. Civ. P. 45(c)(1)(B)(i) (emphasis added); *see also* Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment (emphasis added) ("Because Rule 45(c) directs that compliance may be commanded only as it provides, these amendments resolve a split in interpreting Rule 45's provisions for subpoenaing parties and party officers. . . .  **Rule 45(c)(1)(A) does not authorize a subpoena for trial to require a party or party officer to travel more than 100 miles unless the party or party officer resides, is employed, or regularly transacts business in person in the state.**")  As Mr. Norris does not "reside," is not "employed," nor "regularly conducts business" in a state that is within 100 miles of the District of Colorado's courthouse, the Court cannot compel his attendance with a subpoena issued pursuant to Rule 45.

assertion of an issue not listed in the pretrial order[6] **as the equivalent of a formal**

**motion to amend** the order . . . ."  *See Trierweiler v. Croxton & Trench Holding Corp.*,

90 F.3d 1523, 1543 (10th Cir. 1996) (internal citation omitted, emphasis added); *see*

*also Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1222 (10th Cir. 2000) (citing *Trierweiler*,

90 F.3d at 1543, and holding that plaintiffs who sought to have an additional witness

testify who was not listed on the pretrial order, despite not formally moving for

amendment of the final pretrial order, were "effectively" moving for such amendment "by

opposing the Defendants' *in limine* motion, eliciting Eckert's testimony, and opposing

the Defendants' motion to strike that testimony as beyond the scope of the [Final]

Pretrial Order.")

It is well established that unless the Court modifies its pretrial order, the parties

are "bound to its contents and may not contradict its terms."  *Prager v. Campbell Cnty.*

*Mem'l Hosp.*, 731 F.3d 1046, 1056 (10th Cir. 2013) (citing *Perry v. Winspur*, 782 F.2d

893, 894 (10th Cir. 1986)). "This rule, of course, applies to those portions of pretrial

orders which **list the witnesses** and describe the testimony each party may use." *Id.*

(emphasis added).  As the Tenth Circuit has explained, "[t]he preparation of a [final]

pretrial order requires careful attention and review by the parties and their attorneys,"

and any last-minute revisions "deprive[] one's adversary of fair notice, possibly

discovery, and the opportunity for motion practice, and is subject to abuse by those who

---

[6] The Court recognizes that Defendant's proposed amendment would not be an "**assertion of an issue not listed** in the pretrial order," but rather, a proposed amendment to **remove** a witness who **was listed** in final pretrial order.  Nevertheless, it appears that the principles of law analyzing the propriety of relief in the former situation would apply equally in the latter, so it has applied them here.

employ a sporting theory of justice." *Wilson v. Muckala*, 303 F.3d 1207, 1215-16 (10th Cir. 2002). Rule 16(e) of the Federal Rules of Civil Procedure allows the Court to modify a final pretrial order, but it may do so "only to prevent **manifest injustice**." Although such a standard is not entirely inflexible, Rule 16's "laudable" purpose is "to avoid surprise, **not foment it**." *Wilson*, 303 F.3d at 1216 (emphasis added) (citing *Clark v. Pennsylvania R.R. Co.*, 328 F.2d 591, 594 (2d Cir. 1964) (noting that the purpose of Rule 16 is to replace "the old sporting theory of justice" with a policy of "putting the cards on the table")).

The Tenth Circuit reviews a district court's decision to deny an amendment to a pretrial order for an abuse of discretion. *See Koch*, 203 F.3d at 1222. In doing so, it considers the following factors: "(1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of that party to cure any prejudice; (3) disruption to the orderly and efficient trial of the case by inclusion of the new issue; and (4) bad faith by the party seeking to modify the order." *Id.* That court also considers whether an amendment to the pretrial order was formally and timely requested. *See id.*

Needless to say, these factors, as applied with slight modifications to the circumstances of the case at bar, all weigh against JetStream here. First, Plaintiffs are extremely prejudiced by this late-breaking development. Mr. Norris has information about an incredibly important aspect (if not the **most** important aspect) of Plaintiffs' case. However, not only were Plaintiffs only informed that Jetstream could not "guarantee" Mr. Norris' appearance just barely over a month before trial is set to begin in this matter and after the discovery deadline had already passed, they also were

surprised by such a development, given Defendant's implicit assurances that it would produce Mr. Norris at trial (he was, after all, listed as a "will-call," not a "may-call" witness or a witness who may "voluntarily absent himself from trial").

Second, and relatedly, Plaintiffs' ability to cure this prejudice is markedly limited here.  Although Jetstream asserts that Plaintiffs should be able to use Mr. Norris' prior videotaped deposition in lieu of live testimony, as previously discussed, it is clear that some rather critical "building blocks" of Plaintiffs' circumstantial case of JetStream's discriminatory motive against Plaintiffs include Mr. Norris' allegedly discriminatory statements about Muslims – and it is undisputed that Plaintiffs were not able to depose Mr. Norris about these statements, such that showing his existing deposition testimony to the jury would not cure this prejudice, as Plaintiffs obviously cannot cross-examine a videotape.[7]  For these same reasons, the trial would be significantly disrupted by Mr. Norris' absence.  Additionally, Mr. Norris is a very important witness for both Plaintiffs **and** Defendants in this matter – particularly because Title VII permits a jury to consider whether an employer's explanations for an adverse action have changed in determining the credibility of its explanation, and JetStream has, at least at one point in the course of this litigation, indicated that Mr. Norris' interviews with Plaintiffs played at least **some role** in its decision not to hire them, even if they now disclaim this explanation.  *See*

---

[7] Moreover, the Court would be remiss not to note that "although the federal rules provide a mechanism for the admission of deposition testimony, they do not alter the 'long-established principle that testimony by deposition is less desirable than oral testimony.'"  *Garcia-Martinez v. City & Cnty. of Denver*, 392 F.3d 1187, 1193 (10th Cir. 2004); *see also Salsman v. Witt*, 466 F.2d 76, 79 (10th Cir. 1972) ("The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand.") (internal quotation omitted).

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (explaining

that proof that a defendant's explanation for its adverse action is unworthy of credence

is "one form of circumstantial evidence that is probative of intentional discrimination, and

it may be quite persuasive. . . . In appropriate circumstances, the trier of fact can

reasonably infer from the falsity of the explanation that the employer is dissembling to

cover up a discriminatory purpose"); *Swackhammer v. Sprint/United Mgmt. Co.*, 493

F.3d 1160, 1167 (10th Cir. 2007) (A plaintiff shows pretext by demonstrating "such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its action that a reasonable factfinder could

rationally find them unworthy of credence").

　　　Finally, although the Court cannot definitively opine regarding the bad faith of

Defendant's counsel, two items are of note.  First, JetStream only informed Plaintiffs'

counsel that Mr. Norris "may voluntarily decline to appear for trial" (Doc. # 220 at 5) just

over a month before trial begins (despite the closure of discovery and his inclusion as a

"will-call" witness for Defendant in the Final Pretrial Order).  Second, JetStream did not

formally move for an amendment to the Final Pretrial Order.  This kind of conduct at the

very least smacks of gamesmanship and the kind of "old sporting theory of justice" that

Rule 16(e) is specifically designed to prevent.  *See Clark*, 328 F.2d at 594.

　　　For all of the above-mentioned reasons – particularly because, given the timing

of his deposition, Plaintiffs could not adequately cross-examine Mr. Norris about either

(1) JetStream's reasoning for the adverse actions it took against them or (2) derogatory

statements Mr. Norris allegedly made to other JetStream employees, the Court does not

believe that amending the final pretrial order to remove Mr. Norris as a witness is in the interests of justice. *See* Fed. R. Civ. P. 16(e) (the Court may modify a final pretrial order "only to prevent manifest injustice.")   At the same time, Plaintiffs have identified no authority (and the Court has found none) that would allow the Court to **force** Mr. Norris to attend trial against his will in Denver.

Accordingly, the Court ORDERS that Plaintiffs' Motion to Compel Defendant to Produce David Norris at Trial, Or Alternative Relief, and Request for Expedited Ruling (Doc. # 212) is GRANTED in part.  It is

FURTHER ORDERED that if Defendants refuse to assure Mr. Norris' presence at trial in Denver, Plaintiffs are permitted to take another, pre-trial deposition of Mr. Norris.  However, if Defendants assure the Court **in writing, no later than Wednesday, March 30, 2016**, that Mr. Norris will in fact be present in Denver to testify at trial, Plaintiffs will not be permitted to take this deposition.[8]  It is

FURTHER ORDERED that Defendant's Motion to Strike Plaintiffs' Reply (Doc. # 227) is hereby DENIED AS MOOT because the Court did not need to consider

---

[8] Given this relief, the Court need not consider whether Plaintiffs have met the standard for the showing of live testimony via remote transmission under Rule 43 of the Federal Rules of Civil Procedure, especially because the Rule's drafters have indicated a preference for deposition testimony in any case. *See* Fed. R. Civ. P. 43 advisory committee's note to 1996 amendment (emphasis added) ("Other possible justifications for remote transmission must be approached cautiously. Ordinarily depositions, including video depositions, **provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena**, or of resolving difficulties in scheduling a trial that can be attended by all witnesses.")

Plaintiffs' Reply in deciding this Motion.[9]

DATED:  March 28, 2016                        BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[9] Pursuant to a recent telephone conversation between the parties and Chambers staff, the Court understands that both parties have also requested an expedited telephone conference with this Court to resolve whether particular witnesses are to be presented "live" at trial or via deposition. However, the parties are professionals, and this Court admonishes them to begin acting as such, rather than squabbling like children in a sandbox.  Accordingly, the parties are instructed to confer **in good faith** among themselves and determine which witnesses will be presented via live testimony and which will be presented via deposition testimony.  This list of witnesses was to be jointly submitted to the Court no later than close of business on Wednesday, March 30, 2016.  Should Plaintiffs believe that they are prejudiced as a result of Defendant's late change of position regarding the live testimony of these witnesses, Plaintiffs are also authorized to take a video deposition of these witnesses and the Court will also consider a motion to assess the cost of these depositions against Defendant.