**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02340-CMA-KMT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

SAFIA ABDULLE ALI,
SAHRA BASHI ABDIRAHMAN,
HANA BOKKU,
SADIYO HASSAN JAMA, and
SAIDA WARSAME, a/k/a AMINO WARSAME,

    Plaintiff Intervenors,

v.

JETSTREAM GROUND SERVICES, INC.,

    Defendant.

---

# ORDER GRANTING MOTION TO STRIKE

This matter is before the Court on Plaintiffs' Motion to Strike Opinions By Defendant's Expert Dr. Pearce. (Doc. # 269.) For the reasons described below, the Court grants Plaintiffs' Motion.

## I. BACKGROUND

During his direct examination, Dr. Pearce, Defendant's rebuttal expert in labor economics, testified as follows:

Q. (BY MR. DEENY) Did you review the air stream (sic) records -- I keep saying air stream. I am sorry. I think that's a trailer. I apologize. AirServe, did you review the AirServe employment records and payroll records prior to the end of the contract with AirServe and United?
A. I did.
Q. And what were the -- what was the employment status of each of the individual plaintiffs there?
A. Well, there was a P in the top of the -- in the header portion of the record, which had payroll history, basically, below it, which I understood to mean they were part time.
Q. That was under the category of status?
A. Yes.
Q. And then did you also analyze the hours worked?
A. I examined them.
Q. And what did you conclude?
A. That they varied quite a bit. And there some periods where they worked full -- where they worked full time in the pay period and had some over time. But a lot of the time they were working less than 70 hours a week or a pay period. A pay period is 2 weeks so 70 hour pay period is a 35 hour week.
Q. And what was the eligibility requirement at JetStream for full time?
A. 35 hours.
Q. And so is the assumption that they would have been even entitled to benefits at JetStream valid?
MS. JAECKEL: Objection, Your Honor, lack of personal knowledge.
THE COURT: Sustained.
Q. (BY MR. DEENY) Based on -- if they were in part time status, would they have been titled?
MS. JAECKEL: Same objection, Your Honor.
THE COURT: You need to lay more foundation, I am sorry you need to lay more foundation.
MR. DEENY: Right.
Q. (BY MR. DEENY) Comparators from AirServe that came to JetStream that were 35 hours or less, did those people have benefits?
A. No.
Q. And back to your original assessment. Is there any information that you have reviewed that would suggest that these individuals would have been treated any differently than those individuals that were hired?
A. No.

The next day, on cross-examination, counsel for Plaintiff EEOC, Ms. Jaeckel,

questioned Dr. Pearce as follows:

> Q. (BY MS. JAECKEL) And yesterday, in your questioning with Mr. Deeny, you testified that you considered AirServe payroll records in preparing your expert report?
> A. I looked at them after -- I was shown those after I got here, after I finished the report.

At this point, Ms. Jaeckel moved to strike Dr. Pearce's testimony regarding Plaintiff-Intervenors' part-time status at JetStream, as Dr. Pearce's expert report did not list AirServ payroll reports as documents or data that he reviewed in preparation of his report, as required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. The Court reserved ruling on the issue, and ordered the parties to submit briefing regarding whether the testimony should be struck. The Court has considered the Motion, as well as Defendant's Response thereto, and the issue is ripe for ruling.

## II. ANALYSIS

Rule 26(a)(2)(B) of the Federal Rules of Civil procedure requires that expert witnesses must disclose, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Such disclosures are required in order "to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions and trial." *Cook v. Rockwell Int'l. Corp.*, 580 F.Supp.2d 1071, 1122 (D. Colo. 2006). Rule 37(c)(1) of the Federal Rules of Civil Procedure, in turn, provides that if a party fails to provide information as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Rule 37(c)(1) also provides that, in addition to (or

instead of) striking the expert's testimony, "the court, on motion and after giving an opportunity to be heard, . . . may inform the jury of the party's failure [to disclose]." *Id.*

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc., v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (quoting *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)). Although "[a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," the Court is guided by the following factors in deciding whether it should exclude expert evidence: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the erring party's bad faith or willfulness. *Id.* "The burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosures." *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, No. 10-CV-02516-WJM-KLM, 2014 WL 4651643, at *2 (D. Colo. Sept. 18, 2014) (citing *Contour PAK, Inc. v. Expedice, Inc.*, 2009 WL 2490138, at *1 (D. Colo. Aug.14, 2009)).

Under Rule 37(c)(1), the court must first consider whether Defendant has established "substantial justification" for its failure to disclose the basis of Dr. Pearce's new opinion about Plaintiff-Intervenors' part time status at AirServ. Defendant argues that Rule 26(a) does not even apply to Dr. Pearce's failure, or, in the alternative, that its failure to disclose Dr. Pearce's reliance on the AirServ payroll records was "substantially

4

justified," because Dr. Pearce's testimony about the Air Serv payroll records was merely offered to "rebut Dr. LaJeunesse's trial testimony concerning the new basis for his opinion":

> Dr. LaJeunesse testified at trial that he based his assumption of full-time status at JetStream on Plaintiffs' trial testimony and their work history – a basis entirely different from the one stated in his report. Allowing Dr. Pearce to respond based on his review of the AirServ payroll records is appropriate and in accordance with the Federal Rules of Evidence.

(Doc. # 270 at 3–4, 5.)  Specifically, Defendant cites Dr. LaJeunesse's Expert Report, which stated, "**Based on the electronic (Excel) payroll records** provided by the Defendant, the damage estimate relies on a 40 hour workweek at the regular hourly rate . . . ." (Doc. # 270-2 at 4) (emphasis added).  In contrast, at trial, Dr. LaJeunesse testified that he assumed Plaintiffs would have enjoyed full-time status at JetStream for purposes of his computation of backpay damages, "based on the testimony [of Plaintiff-Intervenors at trial] **and their work history**." He also testified that, "since there is testimony and a **work history** of working fulltime by the victims, I wasn't prepared to deny them that potential [for full-time employment at JetStream]."

Defendant, however, cites no authority for its assertion that, despite Rule 26's strict disclosure requirements, it may effectively supplement the testimony of its own expert **at trial** in order to impeach the testimony of the other party's expert.[1] Of course, Defendant could have **cross examined** Dr. LaJeunesse regarding the fact that,

---

[1] Defendant cites cases indicating that, pursuant to Rule 703, an expert may base his opinion on facts made known to the expert at a hearing.  Such cases are inapposite and none discuss Rules 37(c)(1); Dr. Pearce was not in attendance at trial and did not hear Dr. LaJeunesse's testimony.  Similarly, *In re Air Disaster at Lockerbie Scotland,* 37 F.3d 804 (2d Cir. 1994), offers no guidance on this issue.  That case involved the defendant's attempt to have its expert rebut the plaintiff's expert, but does not indicate that the defendant failed to disclose the subject of the rebuttal testimony prior to the expert disclosure deadline.  *See id.* at 817.

according to his report, his assumption of full-time work was based on Defendant's own payroll records, not the "work history" of Plaintiff-Intervenors. However, Defendant apparently decided not to do so when it was given such an opportunity:

> Q. (BY MR. DEENY) Okay. All right. And then if you look at these, all of these individuals, the assumption that you made is that they all worked 40 hour weeks; correct?
> A. That is correct. Including their paid time off for vacation paid leave, sick leave the other leave categories that JetStream offered.

Defendant's counsel asked no follow up questions about the source of Dr. LaJeunesse's assumptions (or about the fact that that source had purportedly changed), deciding instead to move on to questions about his assumptions regarding overtime. Defendant has thus failed to show that its failure to disclose Dr. Pearce's reliance on the payroll records is substantially justified.

The Court also agrees with Plaintiffs that this testimony is not harmless. It is undisputed that Plaintiffs were surprised by the testimony. They were also prejudiced; specifically, Plaintiffs already presented the testimony of Dr. LaJeunesse and rested their case before hearing about Dr. Pearce's new basis for his opinion as to Plaintiff-Intervenors' part-time status, and Dr. Pearce's testimony is probative of whether or not Plaintiff-Intervenors would have qualified for benefits, one significant aspect of their possible back pay damages. Likewise, Plaintiffs have no ability to cure this prejudice: trial has almost concluded, and interrupting it to depose Defendant's expert on this issue is simply not an option at this juncture, nor can they call a witness to explain the meaning of the "P" on AirServ's records. Although there is not conclusive evidence of bad faith or willfulness, the fact that Defendant did not disclose that Dr. Pearce had

never seen the AirServ payroll records until two days before he testified – especially because, at least according to Defendant's Response to the instant Motion, Dr. Pearce was only testifying to this effect to impeach Dr. LaJeunesse's testimony – certainly smacks of the kinds of gamesmanship and surprise that Rule 26(a) is designed to prevent.

### III. CONCLUSION

For the reasons stated above, the Court grants Plaintiff's Motion and will strike Dr. Pearce's testimony under Rule 37(c)(1) of the Federal Rules of Civil Procedure. As this testimony has already occurred, the Court will instruct the jury as follows:

> The Federal Rules of Civil Procedure require that the records and data relied on by an expert witness are disclosed to the opposing party in advance of trial. Defendant has not done so here as to a portion of Dr. Pearce's testimony, thus denying Plaintiffs the opportunity to prepare or respond to that portion of Defendant's expert Dr. Pearce. You are thus instructed to completely disregard Dr. Pearce's testimony regarding Plaintiffs' alleged part-time status at AirServ.[2]

DATED: April 25, 2016

BY THE COURT:

*Christine M Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[2] Plaintiffs also suggested that the jury should be instructed that "you should assume they had full-time status at AirServ, when they applied for positions at JetStream." (Doc. # 269 at 7.) This aspect of the instruction appears to order relief that is beyond the scope of Rule 37(c)(1), accordingly, the Court will not provide it.